# United States Court of Appeals

## For the First Circuit

No. 03-2512

IN RE: SERVISENSE.COM, INC.,
Debtor,

ARS BROOK, LLC and PETER BOS,
Appellants,

v.

CRAIG R. JALBERT, LIQUIDATING
SUPERVISOR OF SERVISENSE.COM, INC.,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Patti B. Saris, U.S. District Judge]

Before

Boudin, Chief Judge,
and Torruella and Dyk[*], Circuit Judges.

John P. Dennis with whom Norman Brown, IV and Lynch, Brewer, Hoffman & Fink LLP were on brief for appellants.
Howard P. Blatchford, Jr. with whom Bruce F. Smith, Michael J. Fencer, and Jager Smith P.C. were on brief for appellee.

September 8, 2004

---

[*]Of the Federal Circuit, sitting by designation.

**DYK**, **Circuit Judge**. The question here is whether a Liquidating Supervisor in bankruptcy has the authority pursuant to 11 U.S.C. §§ 363(b) and 704 to settle a disputed claim for the full amount of that claim in order to avoid the expenditure of attorneys' fees and costs. We hold that such a settlement is authorized, and that the bankruptcy court did not abuse its discretion in approving the settlement in this case.

## I

ServiSense.com, Inc. ("ServiSense") was a corporation engaged in the business of reselling telecommunications services to residential customers. In March of 2000 ServiSense hired David A. Dane as its Vice President - Customer Care. He was subsequently promoted to President and Chief Operating Officer on December 21, 2000. Under his employment agreement, Dane was to be paid a yearly salary, and "[a]fter 12 consecutive months of employment," he was entitled to receive "12 months salary and benefits if terminated without cause" (the "severance agreement"). (App. at 346.) As of October of 2000, the amount of Dane's annual salary was $135,000, and the value of Dane's benefits was approximately $12,500, for a total severance payment of $147,500.

ServiSense subsequently experienced financial difficulty, and Dane agreed in June of 2001 to a reduction of his salary by 50% to $67,500 annually. On August 20, 2001, ServiSense filed for Chapter 11 bankruptcy protection. In December of 2001 ServiSense

filed a motion to sell substantially all of its assets, converting the bankruptcy to a Chapter 7 liquidation proceeding. Dane apparently provided valuable assistance both before and after the conversion to a Chapter 7 liquidation proceeding. After the conversion, Dane assisted ServiSense in consummating the sale of its assets, including helping to formulate the Joint Liquidating Plan of Reorganization ("Plan"), until he was terminated as an employee in February of 2002.[1]

The events in question occurred during the period between the Chapter 11 filing and Dane's termination as an employee. On December 6, 2001, Dane instructed ServiSense's bookkeeper to restore his salary to $135,000, and Dane was paid this salary until he was terminated. Although the parties disagree as to whether ServiSense's Board authorized Dane to increase his salary, the present controversy does not directly concern Dane's right to this salary, but rather primarily his right to severance pay. On January 9, 2002, a motion was filed in the name of the debtor proposing "a retention payment agreement ('RPA') with Dane which will ensure his continued employment through the end of the sale process and which will also effectuate a resolution of claims which will otherwise arise in connection with Dane's severance agreement with the Debtor." (App. at 3.) The RPA provided for a payment to

---

[1]   After his termination as an employee, Dane served as an Estate Representative at the hourly rate of $90.

Dane of $35,000 "in consideration for his agreement to remain in the employ of the Debtor through the completion of the sale of its assets." (App. at 3.) The RPA also provided that the $35,000 payment would qualify as an administrative expense entitled to priority in bankruptcy, but that the $35,000 payment "shall reduce the Debtor's obligations under the severance agreement on a dollar-for-dollar basis, and that the remaining claims held by Dane arising out of the . . . severance agreement shall constitute pre-petition general unsecured claims against the Debtor's bankruptcy estate," which were not entitled to administrative priority. (App. at 4.)

A motion to approve this arrangement was filed in the bankruptcy court pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure[2] on January 9, 2002. The motion was signed by counsel for ServiSense and assented to by counsel for the Creditors' Committee. Although the motion was originally granted by the bankruptcy court, a motion to reconsider was filed by appellant Peter Bos -- the Chief Executive Officer, a director, and a creditor of ServiSense -- disputing whether the debtor approved the agreement. While the motion to reconsider was still pending, a Liquidating Supervisor, Craig R. Jalbert, the appellee here, was

---

[2] That rule provides, in pertinent part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

-4-

appointed. The bankruptcy court later granted the motion to reconsider.

In the interim, Dane had been terminated in February of 2002. The parties dispute the circumstances of the termination. The appellants argue that Bos terminated Dane for cause on February 2, 2002, but the appellee argues that Dane was terminated with all of the other ServiSense employees on February 1, 2002. On March 21, 2002, Dane filed an administrative claim for $147,500, arguing that he was entitled to that amount because the severance agreement was executory and because ServiSense had never rejected the agreement.

On April 25, 2002, the Liquidating Supervisor entered into a settlement with Dane under which Dane would receive everything that he would have received under the proposed January 9, 2002, agreement. A motion to approve the settlement was granted by the bankruptcy court, In re ServiSense.com, Inc., No. 01-16539-WCH (Bankr. D. Mass. Aug. 20, 2002) ("ServiSense I"),[3] and the bankruptcy court's action was affirmed on appeal to the district court, In re ServiSense.com, Inc., No. 02-11987-PBS (D. Mass. Sept. 26, 2003) ("ServiSense II").

---

[3] The bankruptcy court also held that its order granting the settlement motion rendered moot the previous motions with respect to the RPA. ServiSense I, slip op. at 21.

-5-

## II

### A

"On an appeal from the district court, we independently review the bankruptcy court's decision . . . . The approval of a compromise is within the sound discretion of the bankruptcy judge, however, and this court will not overturn a decision to approve a compromise absent a clear showing that the bankruptcy judge abused [his] discretion." Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (citations omitted). We apply this abuse of discretion standard "against the background understanding that '[c]ompromises are favored in bankruptcy.'" LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 212 F.3d 632, 635 (1st Cir. 2000) (quoting Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 50 n.5 (1st Cir. 1998)) (alteration in original). "[T]he responsibility of the bankruptcy judge, and ours on review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Healthco Int'l, 136 F.3d at 51 (quoting Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983)) (internal quotation marks and alterations omitted).

The propriety of bankruptcy settlements is judged under a four-part standard:

> In deciding whether to approve a compromise of a lawsuit, the specific factors a

> bankruptcy court should consider include: "(i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise." The court's consideration of these factors should demonstrate whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate.

Jeremiah v. Richardson, 148 F.3d 17, 23 (1st Cir. 1998) (quoting Jeffrey, 70 F.3d at 185) (citation omitted).

The bankruptcy court held with respect to the first two factors that (1) Dane had a colorable claim to administrative priority for his $147,500 claim under the severance agreement and (2) there would be no difficulties in the matter of collection. ServiSense I, slip op. at 20. With respect to the third factor -- the complexity, expense, inconvenience, and delay of litigation -- the bankruptcy court found: "Given the acrimony which was evident during the hearings on these matters and which permeated the affidavits presented, obtaining [the required] evidence will be arduous. The expense of such litigation is certain to exceed the settlement amount of $35,000." Id. at 20-21. Finally, with respect to the fourth factor, the bankruptcy court concluded that, because the cost of litigation would "in all likelihood" exceed the settlement amount, the creditors' "interests would better be served

-7-

by settling the matter, avoiding the litigation and having the case closed as expeditiously as possible." Id. at 21.

The district court agreed that Dane had a colorable claim and that, "based on the parties' prior animosity (which [it] observed as well), [litigation of the issues covered by the settlement] would likely be rife with disputes." ServiSense II, slip op. at 14. In addition, the district court noted that the parties did not dispute the bankruptcy court's finding that "the expense of such litigation would be certain to exceed the settlement amount," and it held that the bankruptcy court acted within its discretion with respect to the other Jeremiah factors. Id. The district court also noted that no party had objected to the appointment of the Liquidating Supervisor, indicating that he was not seen as partial or untrustworthy, and that the Creditors' Committee had assented to the original RPA and had not objected to the Liquidating Supervisor's settlement. Id. at 14-15.

**B**

The focus of this appeal is on whether Dane had a colorable claim to a $147,500 priority claim for severance. For a claim to be entitled to administrative priority in bankruptcy, it must arise after the bankruptcy petition has been filed. Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976). "When the claim is based upon a contract between the debtor and the claimant, the case law teaches that a creditor's

-8-

right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business" after the bankruptcy petition was filed. Id. In approving the settlement in this case, the bankruptcy court focused on Mammoth Mart in determining whether Dane's claim under the severance agreement could be entitled to administrative priority. ServiSense I, slip op. at 19. Mammoth Mart states:

> [W]hether a claim for severance pay based upon an unrejected contract with the debtor and arising from a chapter XI discharge will be entitled to § 64(a)(1) priority will depend upon the extent to which the consideration supporting the claim was supplied during the reorganization. If an employment contract provides that all discharged employees will receive severance pay equal to their salaries for a specified period, the consideration supporting the claim--being an employee in good standing at the time of the discharge--will have been supplied during the arrangement, and the former employee will be entitled to priority.

536 F.2d at 955. The bankruptcy court held that, under Mammoth Mart, because Dane arguably remained an employee in good standing at the time of his discharge, "it is reasonable to conclude that Dane has a colorable claim that he is entitled to have his severance claim treated as a priority claim." ServiSense I, slip op. at 20.

After the bankruptcy court's decision, this court decided Mason v. Official Committee of Unsecured Creditors (In re FBI Distribution Corp.), 330 F.3d 36 (1st Cir. 2003). In FBI Distribution, an employee sought to recover severance benefits under her employment agreement, which provided that she would receive three years' salary and other fringe benefits if she was terminated without cause. Id. at 39. The court reaffirmed that, under Mammoth Mart, an employee is "entitled to administrative priority only to the extent that the consideration supporting the claim was supplied to the debtor in possession during the reorganization and was beneficial to the estate." Id. at 42-43.

The court held that, in the agreement at issue in FBI Distribution, "the consideration supporting [the employee's] claim for severance benefits was not 'being an employee in good standing at the time of discharge,' but rather her agreement to forego other employment opportunities . . . , which she provided prepetition to the debtor the moment she signed the Employment Agreement," and it rejected the employee's argument that her claim was entitled to administrative priority under Mammoth Mart. Id. at 46-47 (quoting Mammoth Mart, 536 F.2d at 955). The court noted that "it is not entirely clear what type of severance provision the Mammoth Mart court was contemplating when it discussed this hypothetical situation," but "f[ou]nd it unlikely that it was referring to severance provisions in executive contracts, like the one here."

-10-

Id. at 47.  Instead, the court "presume[d] that [the Mammoth Mart court] was referring to the severance plan at issue in [In re Public Ledger, Inc., 161 F.2d 762 (3d Cir. 1947)], which was a plan that provided for severance pay in lieu of notice of termination." Id.  Accordingly, the court held that the employment agreement in FBI Distribution was not entitled to administrative priority because there was never a court-approved assumption of the agreement by the debtor and because the consideration was not supplied post-petition.  Id. at 48.

The district court determined that the later FBI Distribution decision would have precluded the settlement in this case, stating that "[i]n light of the First Circuit's clarification of the law, the bankruptcy court turned out to be overly pessimistic in its conclusion that under Mammoth Mart, the Liquidating Supervisor would not be likely to succeed against Dane on his claim for full severance and salary as a priority claim." ServiSense II, slip op. at 12.  Rather, the district court held:

> The Liquidating Supervisor would have had a strong argument that Dane had given the complete consideration required for receipt of the severance payment as soon as he had been employed twelve months with Debtor, that is in March 2001, which is before the filing of the petition.  Therefore, under the rationale of FBI Distribution, Dane arguably held only a contingent claim against Debtor at the Petition Date, which should have been classified as pre-petition debt.

-11-

<u>Id.</u> Thus, the district court determined that the Liquidating Supervisor would have had a strong argument under <u>FBI Distribution</u> that Dane was not entitled to administrative priority for his claim under his severance agreement. Nevertheless, the district court held that the settlement was reasonable given the state of the law -- as represented by <u>Mammoth Mart</u> -- at the time of the settlement and the bankruptcy court's approval of the settlement, stating that "it was not unreasonable to have settled this claim for short money." <u>Id.</u> at 13.

**C**

We disagree with the bankruptcy court and the district court that Dane had a colorable claim to administrative priority for his $147,500 claim under the severance agreement. Rather, this case is unusual in that the Liquidating Supervisor agreed to pay Dane everything that Dane had a colorable right to claim.

Dane's argument that he was entitled to administrative priority for his $147,500 claim under the severance agreement had little support, even under <u>Mammoth Mart</u>. There is now no claim here that ServiSense assumed the agreement pursuant to 11 U.S.C. § 365(a). Under these circumstances, Dane would have been entitled to administrative priority for his claim under the severance agreement only if he provided consideration after ServiSense filed its bankruptcy petition. <u>See</u> <u>Mammoth Mart</u>, 536 F.2d at 954. Pursuant to <u>Mammoth Mart</u>, Dane could have made two arguments with

-12-

respect to his entitlement to administrative priority, neither of which would have given Dane a colorable claim for administrative priority for his claim. First, Dane could have argued that he was entitled to priority because he was "an employee in good standing at the time of [his] discharge." Id. at 955. However, as FBI Distribution made clear, Mammoth Mart cannot be read to encompass Dane's severance agreement. See FBI Distribution, 330 F.3d at 46-47. Dane was an executive seeking to enforce an agreement he had negotiated with ServiSense, not an hourly employee seeking severance pay pursuant to a company policy, like the appellants in Mammoth Mart. In any event, Dane's severance agreement was not based on a requirement that he remain "an employee in good standing at the time of the discharge," unlike the agreement discussed in Mammoth Mart. 536 F.2d at 955. Rather, the severance agreement by its own terms provided for severance only "[a]fter 12 consecutive months of employment." (App. at 346.) Dane earned the right to severance once he had performed twelve months of service, which occurred pre-petition.

Nor is there a colorable claim pursuant to footnote 4 of Mammoth Mart[4] that, to induce Dane to remain on the job, ServiSense

---

[4]   Footnote 4 of Mammoth Mart provides:  "The result [in this case] would be different if the debtor-in-possession had, to induce the employees to remain on the job, promised them that, if discharged, they would receive severance pay based on the prior practice.  Then the consideration supporting appellants' claims would be the services performed subsequent to the debtor-in-possession's promise."  536 F.2d at 955 n.4.

-13-

promised him after the bankruptcy petition was filed that he would receive severance pay based on his severance agreement. As the Liquidating Supervisor candidly conceded at oral argument, there is no colorable claim here that the debtor induced Dane to remain with the company by promising that he would receive $147,500 in severance pay pursuant to the pre-filing agreement. Even assuming that the debtor approved the increase of Dane's salary to the $135,000 level, there was no post-petition promise to pay him severance to retain his services. The only possible inducement by ServiSense was its promise (1) to pay the $35,000 retention payment as an administrative expense and (2) to treat the remainder of the $147,500 sought by Dane as an unsecured claim. Thus, Dane did not have a colorable claim to administrative priority for his claim for $147,500 under the severance agreement.

Dane's only colorable claim was for exactly what he received under the January 9, 2002, settlement -- a $35,000 priority claim for the retention payment and a $112,500 unsecured claim for the balance of his severance payment under the pre-petition severance agreement. Even this claim was legitimately in dispute. First, the parties dispute whether ServiSense ever authorized the $35,000 retention payment and whether the Liquidating Supervisor had the authority to ratify such an agreement. In addition, there is a dispute even as to the unsecured claim for $112,500, as the parties dispute whether Dane's

"salary" for purposes of the agreement was $67,500 or $135,000. Even though the bankruptcy court decided that Dane was not terminated for cause and that the severance agreement was triggered, ServiSense I, slip op. at 19, the parties also dispute whether Dane was terminated for cause, which would have eliminated all of Dane's rights under the settlement agreement. While the claim to priority for the $35,000 and $112,500 amounts was disputed, the claim was nonetheless a substantial, non-frivolous claim.

The key fact here is that the bankruptcy court found that the expense of any litigation of Dane's claim "is certain to exceed the settlement amount." ServiSense I, slip op. at 21.[5] Based on this finding, we agree with the district court that the bankruptcy court had the authority to approve the settlement and did not abuse its discretion in doing so.[6] See ServiSense II, slip op. at 14. A decision by a Liquidating Supervisor to spare the creditors the

_____

[5] The bankruptcy court characterized the amount of the settlement as $35,000. However, it appears that Dane also recovered approximately 12.5% of his non-priority claim for $112,500, or slightly more than $14,000. We do not think that this difference is significant.

[6] In this connection, we reject the appellants' contention that the Liquidating Supervisor lacked the authority to enter into the settlement agreement because the Plan provides that all pre-petition agreements like Dane's settlement agreement were deemed rejected and thus must be treated as non-priority unsecured claims. The Liquidating Supervisor plainly had the authority under section 6.8(c) of the Plan to enter into settlements with the approval of the bankruptcy court.

expense of litigation over a non-frivolous claim where the expense of litigation is "certain" to exceed the amount of a settlement is eminently reasonable, and we will not disturb it.  We need not decide in this case what other circumstances might make it reasonable to enter into a settlement for the full amount of the claim.

**III**

Because the bankruptcy court did not exceed its authority or abuse its discretion in approving the Liquidating Supervisor's settlement, its decision must be <u>affirmed</u>.

<u>It is so ordered</u>.