*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 05b0015n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re: ERIN FARMS, INC., )<br><br>Debtor. )<br>_____ )<br><br>JOHN TIMMONS, )<br><br>Appellant, )<br><br>v. )<br><br>DEERE CREDIT, INC.; MYRON N. TERLECKY, )<br>TRUSTEE, CHAPTER 11 TRUSTEE; )<br>ERIN FARMS, INC., )<br><br>Appellees. )<br>_____ ) | Nos. 04-8072 and 04-8095<br>(consolidated) and 04-8096 |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division, at Columbus.
No. 03-63627.

Submitted: August 3, 2005

Decided and Filed: December 7, 2005

Before: GREGG, LATTA, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** John Timmons, Lockbourne, Ohio, for Appellant. Joseph C. Winner, McFADDEN, WINNER & SAVAGE, Columbus, Ohio, Myron N. Terlecky, STRIP, FARGO, HOPPERS & LEITHART, Columbus, Ohio, for Appellees.

## OPINION

JOSEPH M. SCOTT, JR., Bankruptcy Appellate Panel Judge. John Timmons, *pro se* Appellant, ("Appellant") filed three separate appeals relating to orders entered by the bankruptcy court in the case of Erin Farms, Inc. ("Erin Farms"). The first appeal concerns the bankruptcy court's entry of an order approving settlement and disbursement of funds in an adversary proceeding initiated by secured creditor Deere Credit, Inc. ("Deere Credit"). The second appeal pertains to the bankruptcy court's entry of an order converting Erin Farms' bankruptcy case from chapter 11 to chapter 7. These appeals were consolidated by order entered March 18, 2005. The third, related appeal is taken from the bankruptcy court's order denying Appellant's motion to compel service of process. For the reasons that follow, the bankruptcy court's decisions are AFFIRMED.

## I. ISSUES ON APPEAL

The issues on appeal are: (1) whether the bankruptcy court abused its discretion when it approved the settlement and disbursement of funds in the Deere Credit adversary proceeding; (2) whether the bankruptcy court abused its discretion when it converted Erin Farms' bankruptcy case from chapter 11 to chapter 7; and (3) whether the bankruptcy court erred when it denied Appellant's motion to compel service of process.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and a "final order" of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order approving a

proposed settlement is a final order. *Adam v. Itech Oil Co. (In re Gibraltar Res., Inc.)*, 210 F.3d 573, 576 (5th Cir. 2000). Likewise, an order converting a chapter 11 case to chapter 7 is a final order for purposes of appeal. *Vista Foods U.S.A., Inc. v. Unsecured Creditors' Comm. (In re Vista Foods U.S.A., Inc.)*, 202 B.R. 499, 500 (B.A.P. 10th Cir. 1996). Although the bankruptcy court's order denying Appellant's motion to compel service of process is a non-final order, the Panel has allowed it to proceed due to its relationship to the other two appeals.

The bankruptcy court's approval of the proposed settlement and disbursement of funds is reviewed for abuse of discretion. *In re Servisense.com, Inc.*, 382 F.3d 68, 71 (1st Cir. 2004). The decision to convert Erin Farm's bankruptcy case from chapter 11 to chapter 7 also is reviewed for abuse of discretion. *Sullivan Central Plaza I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Central Plaza I, Ltd.)*, 935 F.2d 723, 728 (5th Cir. 1991). "An abuse of discretion occurs only when the [trial] court 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854, 858 (B.A.P. 6th Cir. 1997), *aff'd*, 201 F.3d 693 (6th Cir. 1999).

## III. FACTS

A. Parties

Erin Farms produced wheat, corn, and soybeans. It filed a petition for relief under chapter 11 of the United States Bankruptcy Code on September 5, 2003.

John Timmons was part owner and operator of a 600 acre farm ("Timmons Farm") consisting of two separate parcels. The owner of the first parcel, referred to by the United States Farm Service Agency ("FSA") as FSA 291, is identified throughout the record as the "Elizabeth Timmons Estate" ("Timmons Estate"). The owners of the second parcel, FSA 292, are referred to as the "Pryor Timmons Heirs" ("Timmons Heirs"). Timmons Estate and Timmons Heirs appear to consist of Appellant and his two siblings. Appellant has operated Timmons Farm on a "50/50 crop share basis" almost continually since 1973. Under this arrangement, Timmons Estate and Timmons Heirs paid

3

taxes on the real property and paid for half of the farm's production expenses (including seed, herbicide, and fertilizer). Appellant supplied the labor and equipment required to plant and harvest the crop and paid the other half of the production expenses. The profits generated by the crop then were divided on a 50/50 basis between Timmons Estate/Timmons Heirs and Appellant.

In crop year 2001, Erin Farms provided "custom" planting and harvesting services on Timmons Farm. Some of these services subsequently were subcontracted to Pitstick Farms, Inc. ("Pitstick Farms"), another custom farm services provider. In crop year 2002, Appellant rented Timmons Farm to Debtor. Per its agreement with Appellant, Erin Farms was to operate the farm on the same 50/50 crop share basis that previously had been established between Timmons Estate/Timmons Heirs and Appellant.

Appellant states that he resumed operation of Timmons Farm in crop year 2003. However, Erin Farms continued to provide custom spray services for the farm, and the planting and harvesting were subcontracted to Pitstick Farms.

Deere Credit extended crop input financing to Erin Farms. As of the petition date, Deere Credit was owed approximately $2.3 million. Primary collateral for the debt was the wheat, corn, and soybeans produced by Erin Farms.

When Deere Credit learned of Erin Farms' bankruptcy filing in September 2003, harvest time was rapidly approaching. Concerns regarding the upcoming harvest prompted Deere Credit to file an emergency motion for appointment of a chapter 11 trustee. The bankruptcy court held a hearing on the motion and on September 18, 2003, appointed Myron N. Terlecky as chapter 11 trustee.

B. Deere Credit Adversary Proceeding

In addition, on September 17, 2003, Deere Credit filed an adversary proceeding seeking determination of the validity, priority, and extent of its liens on various crops. On October 2, 2003,

the complaint was amended to name additional defendants, which included the trustee and land owners believed to have rented farm ground to Erin Farms for the 2003 crop year. Deere Credit asserted a security interest in the crops produced by these land owners. Timmons Estate and Timmons Heirs were among the land owner defendants named in the amended complaint. Attorney Richard F. Meyer appeared on behalf of Timmons Estate and Timmons Heirs in the adversary proceeding. By order entered on December 19, 2003, Appellant was identified as a "proper and necessary party in [the] adversary proceeding." (Appellant's App. at 67, Case No. 04-8096.)

According to Appellant, Erin Farms' bankruptcy filing and Deere Credit's initiation of the adversary proceeding led to delays in harvesting. In November and December 2003, heavy rains and flooding on Timmons Farm caused severe damage to the crops. Appellant estimates that seventy-five percent of his crop was lost due the flooding. He asserts that although the remainder of the crop survived the flooding, it subsequently was lost due to the trustee's failure to timely harvest. The parties agree that, in the end, *no grain whatsoever was harvested from Timmons Farm.*

On June 4, 2004, the trustee filed a motion for Order Approving the Settlement of Certain Issues in [the Deere Credit Adversary Proceeding] and Authorizing Distribution of Funds. At the time the motion was filed, the trustee was holding approximately $1.1 million of net harvest proceeds in an escrow account. Under the settlement agreement, the trustee would retain a $28,000 "carve out" from those proceeds, minus expenses. After payment of nominal amounts in settlement of other claims, the majority of the proceeds were to be distributed to Deere Credit in satisfaction of its secured claim. Notably, *none of these proceeds came from crops harvested on Timmons Farm.*

Appellant objected to the proposed settlement and distribution of funds, and a hearing on the matter was held before the bankruptcy court on July 8, 2004. Appellant was given full opportunity to voice his objections at the hearing, and he acknowledged that the funds subject to the settlement were not proceeds from crops grown on Timmons Farm. Still, Appellant asserted that Deere Credit did not have a valid security interest in the 2003 crops grown on the farm. According to Appellant, Deere Credit's invalid claim to his crops and the trustee's failure to timely harvest them led to their

total loss. Seemingly under a "bird in the hand" theory, Appellant argued at the hearing that the trustee should not distribute funds to Deere Credit until Appellant's potential claims against Deere Credit and the estate were litigated and resolved.

The trustee, as well as the attorney for Deere Credit, assured Appellant, on the record, that the settlement would not preclude him from pursuing claims relating to the adversary proceeding and the lost crop. Furthermore, the bankruptcy court told Appellant that approval of the settlement would not prejudice his rights.

At the conclusion of the hearing, the bankruptcy court approved the settlement, finding that it was in the best interest of the estate. On July 16, 2004, the bankruptcy court entered an order approving the settlement and authorizing the distribution of crop proceeds ("settlement and disbursement order"). The order specifically states that it "does not prejudice the right of [Appellant] to pursue any claim he may wish to assert in this Court or any other appropriate forum." (Appellees' App. at 107, Case Nos. 04-8072 and 04-8095.)

Appellant filed a timely appeal of the settlement and disbursement order on July 26, 2004. Both the bankruptcy court and the Panel denied his motions to stay that order pending appeal.

C. Conversion to Chapter 7

As the adversary proceeding progressed, Appellant raised several objections in the main bankruptcy case. On June 10, 2004, the United States Trustee filed a motion to convert the case from chapter 11 to chapter 7. The motion stated that "cause" for conversion existed because the trustee was no longer operating Erin Farms' business and there was no reasonable likelihood of rehabilitation. Furthermore, the motion alleged that Erin Farms was unable to effectuate a plan and that conversion would prevent the accrual of additional administrative expenses. On June 21, 2004, Appellant objected to the conversion motion. The objection states: "[Appellant] respectfully objects to the Trustee's proposed order for dismissal of this Chapter 11 reorganization. This objection is

only for purposes of obtaining finality in the adversary proceeding where unsettled issues still exist." (Appellees' App. at 7, Case No. 04-8096.)

A hearing on the motion to convert was held before the bankruptcy court on August 5, 2004. At the hearing, the trustee consented to the requested conversion. Timmons also appeared and was given the opportunity to present argument to the court. The court attempted to explain that Timmons' concerns about the effect of conversion on his potential claims against Deere Credit and the estate were not warranted. At the conclusion of the hearing, the court granted the motion, and on August 11, 2004, an order converting the case to chapter 7 was entered ("conversion order").

On August 16, 2004, Timmons filed the pleading Motion for Rehearing to Amend Order of Conversion. Notwithstanding the bankruptcy court's previous explanation of the effect of conversion, the motion asserts:

> Conversion of the case implies that all work in the Chapter 11 Case and the Adversary Case have been satisfactorily resolved and would hence leave no forum in which a new adversary case can be taken or in which the old adversary case can be modified. This would relieve the Chapter 11 Trustee from any bond liability and would indeed be prejudicial to [Appellant's] interests.

(Appellees' App. at 13, Case No. 04-8096.) The motion for rehearing was denied by the bankruptcy court in an order entered on November 8, 2004. Appellant timely appealed the conversion order on November 17, 2004, since he filed his appeal within ten days of entry of the order denying his motion for rehearing. *See* Fed. R. Bankr. P. 8002(a), (b)(2) .

D. Appellant's Motion to Compel Service of Process

In addition, the order of November 8, 2004, denied several procedural motions by Timmons, including his Suggestion of Non-Joinder with Supporting Documents and Amended Motion to Compel Service of Process. The motion to compel service of process alleges that Deere Credit's

failure to serve Timmons with a summons and complaint in the adversary proceeding deprived him of his "constitutional right to counter-claim and defend the erroneous allegations of lien priority . . . ." (Appellant's App. at 84, Case No. 04-8096.) On November 17, 2004, Appellant filed a separate appeal from that portion of the November 8 order which denied his amended motion to compel service of process. That appeal also was timely.

## IV. DISCUSSION

A. Settlement and Disbursement Order

"To appeal from an order of the bankruptcy court, appellants must have been directly and adversely affected pecuniarily by the order. This principle, also known as the 'person aggrieved' doctrine, limits standing to persons with a financial stake in the bankruptcy court's order." *S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 665 (6th Cir. 2001) (quoting *Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996)). In this case, not only did Appellant acknowledge repeatedly that the proceeds which the chapter 11 trustee proposed to distribute did not belong to him, but also the order authorizing settlement and distribution stated specifically that Appellant's rights were not affected. Nevertheless, the Panel will address the merits of this appeal.

In considering whether to approve a proposed compromise, "[t]he bankruptcy court . . . is obligated to weigh all conflicting interests in deciding whether the compromise is 'fair and equitable,' considering such factors as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988); *accord, e.g., Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968)). A bankruptcy court's decision "authorizing the trustee in bankruptcy to enter into a compromise of creditors' claims rests in the sound discretion of the [bankruptcy] judge. A reviewing court will not disturb or set aside such a compromise unless it

8

obviously achieves such an unjust result as to amount to an abuse of discretion." *Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963) (citations omitted). Generally, a court "abuses its discretion only when it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 30 (6th Cir. 1988). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Mathews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

Although the bankruptcy court here did not make specific findings as to whether the compromise was fair and equitable, it is obvious from the transcript of the July 8, 2004, hearing that the court considered numerous factors, including the difficulty in preserving perishable assets, the tensions that existed between some of the parties, and the extent of Deere Credit's secured claim. In addition, the bankruptcy based its approval of the proposed settlement of the Deere Credit adversary proceeding on a specific finding that the settlement was in the best interest of the estate. *See Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust Dated June 27, 2002*, 410 F.3d 304, 312 (6th Cir. 2005).

Appellant does not directly dispute the bankruptcy court's conclusions, and, once again, acknowledges that none of the funds subject to disbursement under the settlement are proceeds from crops grown on Timmons Farm. Rather, Appellant challenges the bankruptcy court's approval of the settlement order on the basis that he may have claims against Deere Credit and the Erin Farms' estate relating to the loss of the 2003 crop on Timmons Farm. Appellant apparently fears that his right to pursue those claims was cut off by the settlement. The settlement and disbursement order specifically states that it does not prejudice Appellant's right to assert claims against either the estate or Deere Credit. Appellant's assertions to the contrary are incorrect. Pursuant to the terms of the settlement and disbursement order, Appellant may assert his claims against the trustee and/or Deere Credit in any appropriate forum, within the applicable limitations period. The record supports the

court's conclusion that the settlement was fair and equitable and in the best interest of the estate. The bankruptcy court did not abuse its discretion in approving the settlement and disbursement order.

## B.  Conversion Order

11 U.S.C. § 1112(c) provides that chapter 11 cases involving debtors who are farmers cannot be converted to chapter 7 "unless the debtor requests such conversion." In this case, the bankruptcy court held that § 1112(c) was not applicable in light of the chapter 11 trustee's consent and the practical considerations that favored conversion.  On appeal, Appellant alludes to the bankruptcy court's finding on this point as evidence of the court's failure to follow "established law," but he does not challenge the court's finding on recognizable legal grounds.

Under § 1112(b), a bankruptcy court is authorized to convert a chapter 11 case to a chapter 7 case or to dismiss it, whichever is in the best interest of creditors and the estate, for "cause." 11 U.S.C. § 1112(b).  The statute contains a non-exhaustive list of ten grounds that may constitute cause for conversion or dismissal.  *Id.*  Generally, proof of any one of these factors is sufficient to justify conversion. *See In re Federal Roofing Co.*, 205 B.R. 638, 641 (Bankr. N.D. Ala. 1996).  The court is afforded wide discretion to determine whether cause for conversion exists. *See Koerner v. Colonial Bank (In re Koerner)*, 800 F.2d 1358, 1367 (5th Cir. 1986).

In this case, the bankruptcy court's conversion order was based on findings that the debtor was no longer operating and that the bankruptcy estate was likely to be liquidated.  Because Erin Farms was not likely to rehabilitate and because liquidation under chapter 11 would impose unnecessary administrative costs, the court found cause for conversion to chapter 7.

Appellant has not challenged the bankruptcy court's finding that cause for conversion existed.  Instead, he asserts that conversion of the case to chapter 7 prejudiced his right to pursue potential claims against Deere Credit and the estate. Conversion of Erin Farm's bankruptcy case to

10

chapter 7 does not impact Appellant's ability to pursue his claims relating to loss of the 2003 crop. Conversion to chapter 7 does however reduce the expense of liquidating the bankruptcy estate.

C.  Motion to Compel Service of Process

Appellant is not entitled to the relief requested in his motion to compel service of process, and the bankruptcy court's order denying his motion is proper.  Timmons Estate and Timmons Heirs, owners of  Timmons Farm, were named as defendants in the Deere Credit adversary proceeding. They appeared in the adversary proceeding, were represented by counsel, and could have filed the counterclaim to which Appellant repeatedly refers, if such action had been deemed necessary or appropriate.  Thus, since Appellant and his two siblings are Timmons Estate and Timmons Heirs, Appellant as part owner of Timmons Farm was represented by counsel.  Appellant as a frequent operator of Timmons Farm was named as a "party in interest" and was given great latitude to participate in the adversary proceeding.  Nothing in the record suggests that Appellant was a necessary party or that he was entitled to be named as a defendant.  Nothing in the record suggests that Appellant was prejudiced by Deere Credit's failure to serve him with a summons and complaint. The bankruptcy court did not err in denying Appellant's motion to compel service of process.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court orders approving the settlement in the Deere Credit adversary proceeding, converting the case to chapter 7, and denying Appellant's motion to compel service of process are AFFIRMED.

11