**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 10-1673

IN RE: NIR YACOVI,
Debtor.

NIR YACOVI,

Appellant,

v.

RUBIN AND RUDMAN, L.L.P.; PETER B. FINN;
HAROLD B. MURPHY, Chapter 7 Trustee,

Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Joseph L. Tauro, U.S. District Judge]

Before
Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Valeriano Diviacchi on brief for appellant.
David C. Fixler and Rubin and Rudman, L.L.P. on brief for appellees Rubin and Rudman L.L.P. and Peter B. Finn.
Harold B. Murphy, Christian J. Urbano and Hanify & King, P.C., on brief for trustee appellee Murphy.

March 18, 2011

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**STAHL**, <u>Circuit Judge</u>.   Nir Yacovi, the debtor in a Chapter 7 bankruptcy, appeals a decision approving the settlement of legal claims held by his estate.  Yacovi also asserts that the bankruptcy court should have granted his motion to abandon those claims.  We affirm.

## I. Facts & Background

On October 5, 2005, Yacovi resigned from his position with URS Staffing Corporation and/or United Revenue Service, Inc. (collectively "URS") to start his own tax preparation business, IBTS, Inc., which was to provide services similar to those offered by his former employer.  Shortly thereafter, URS accused Yacovi of violating the employment agreement he had entered into with URS, and Yacovi retained Peter Finn, an attorney at Rubin and Rudman, L.L.P. (collectively "R & R"), to advise him about this contractual issue.

On October 3, 2006, an arbitrator concluded that Yacovi had in fact breached the employment agreement and awarded URS $226,000.[1]  Although the arbitrator did not find that Yacovi was prohibited from competing with URS, he concluded that Yacovi nonetheless violated the agreement by removing, and not timely returning after his resignation, documents from URS (including lists of URS's clients and the fees they paid); retaining the fees

---

[1]The agreement specified that "for any CLIENT lost as a result of Employee's breach of Paragraphs 22 through 26, Employee shall owe . . . the greater of $2,000.00, or three times the annual gross income derived from such CLIENT."  The arbitrator found that Yacovi's breach caused URS to lose 113 clients.

generated from some tax and financial services he provided while employed at URS; soliciting URS's clients and prospective clients for his own benefit prior to resigning; and, after leaving URS, using his knowledge of URS's clients' identities and URS's rates (that is, URS confidential information) to solicit business for IBTS. The arbitrator also noted that Yacovi's account of some facts lacked credibility.

Within weeks of the arbitration decision, Yacovi filed a voluntary petition for Chapter 7 bankruptcy relief, and Harold B. Murphy ("Trustee") of Hanify & King, P.C. ("H & K") was appointed as the trustee. Yacovi's petition listed R & R as holding a claim for legal fees and URS as holding a $226,000 claim for the arbitration award. In early 2007, URS filed a complaint asserting that the arbitration award was non-dischargeable in Yacovi's bankruptcy because it was the result of fraud as a fiduciary, embezzlement, and/or larceny. On March 13, 2008, the bankruptcy court granted URS's motion for summary judgment on this issue. The following year, the court granted Yacovi a discharge,[2] relieved the Trustee of his responsibilities, and closed the case.

However, on May 13, 2009, exactly one month after the case was closed, Yacovi filed a motion to reopen the bankruptcy proceedings to list various legal claims against R & R

---

[2]In November 2006, the Trustee filed a "Report of No Distribution," explaining that he had "received no property nor paid any money on account of the estate except exempt property, and diligent inquiry having been made . . . there is no nonexempt property available for distribution to creditors."

(collectively "malpractice claims")[3] as additional assets of the estate. Specifically, Yacovi alleged that R & R had advised him that, because the employment agreement lacked a non-compete clause covering his post-employment activity, he could operate IBTS and service URS's clients. In a complaint he sought to pursue against R & R, Yacovi contended that a lawyer with appropriate experience exercising the requisite standard of care, "would have advised [him] . . . that any services provided to clients of [URS] would most definitely result in expensive litigation . . . [and] that there was a very real possibility in such litigation that there may be an adverse finding against him." Yacovi moved for the bankruptcy court to abandon the malpractice claims or, in the alternative, "administer this asset to allow him to seek a recovery of [the arbitration award]."

On June 24, 2009, the bankruptcy court granted Yacovi's motion to reopen, but denied his motion to abandon without prejudice. Accordingly, the Trustee began investigating the malpractice claims and requested all relevant documents in Yacovi's possession. The Trustee also successfully applied to the bankruptcy court to have H & K employed as his own counsel to, among other things, advise on the merits of the malpractice claims.

On September 29, 2009, the Trustee moved for approval of a settlement he had reached with R & R. In exchange for the estate releasing all claims against R & R, the settlement required R & R

---

[3]These claims were breach of contract/warranty, legal malpractice, and negligent infliction of emotional distress.

to pay $25,000 and waive any claims it may have had against the estate. In his motion to approve, the Trustee asserted that his investigation of the malpractice claims consisted of the following: discussing the claims and defenses with Yacovi's counsel and with R & R, reviewing the arbitration opinion (which included a detailed analysis of the employment agreement), reviewing filings in URS's state court petition to confirm the arbitration award, reviewing Yacovi's proposed complaint against R & R, and reviewing Yacovi's letter demanding relief from R & R for the purported malpractice. Based on this work, the Trustee believed that there was a "real risk" that litigating the malpractice claims would be unsuccessful, and therefore concluded that the proposed settlement was in the best interest of the estate. The Trustee explained that the arbitrator had found that the employment agreement did not prohibit Yacovi from competing with URS, and therefore it would be difficult to prove that advising Yacovi about IBTS's ability to compete with URS constituted negligence or was the cause of the arbitration award. Moreover, the Trustee found "little support for the allegation" that R & R told Yacovi that he could solicit URS's customers without running afoul of the agreement.

Yacovi opposed the motion to approve, arguing that the Trustee's investigation was inadequate and consisted primarily of discussions with R & R. Although acknowledging that the Trustee procured the relevant documents, Yacovi's counsel swore in an affidavit that he was never consulted by the Trustee about the merits of the malpractice claims. Yacovi's counsel also expressed

-5-

his willingness to pursue the claims on a contingency basis with a percentage allocated to the estate, which was an offer he had previously proposed in conversations with the Trustee.

At the conclusion of a hearing held on October 14, 2009, the bankruptcy court granted the motion to approve, explaining its decision with only a few sentences:

> It's always a tough call when you've got a disputed piece of litigation that the Trustee thinks is not worth pursuing and somebody else thinks is worth pursuing. My obligation generally speaking is to rely on the expertise of the Trustee. In this particular matter I have no reason to doubt the amount of due diligence Mr. Murphy performed in evaluating the claim. I am going to grant the motion.

The district court subsequently affirmed. See In re Yacovi, No. 09-11988, 2010 WL 2106171, at *3 (D. Mass. May 24, 2010).

## II. Discussion

**A.    The Bankruptcy Court Did Not Abuse Its Discretion in Approving the Settlement**

"Bankruptcy court orders endorsing settlements are reviewed for manifest abuse of discretion."[4]    Hicks, Muse & Co. v.

---

[4]There may be a question as to whether Yacovi has standing to pursue this appeal. See Spenlinhauer v. O'Donnell, 261 F.3d 113, 117-20 (1st Cir. 2001) (discussing bankruptcy code's limitations on a debtor's appellate standing). Because neither party briefed this issue and we can dispose of Yacovi's appeal on the merits, we do not address the standing question. Greenwood ex rel. Estate of Greenwood v. N.H. Pub. Utils. Comm'n, 527 F.3d 8, 13 (1st Cir. 2008) ("This court has consistently interpreted [Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)] as applying in its strict form only to issues going to Article III requirements. . . . [W]here any concerns over jurisdiction are a matter of statutory interpretation and not an Article III issue, we may bypass the jurisdictional inquiry." (internal citation omitted)).

Brandt (<u>In re Healthco Int'l, Inc.</u>), 136 F.3d 45, 50 n.5 (1st Cir. 1998). In deciding whether to approve a settlement pursuant to Federal Rule of Bankruptcy Procedure 9019, "The bankruptcy court essentially is expected to assess and balance the value of the claims being compromised against the value of the compromise proposal." <u>Id.</u> at 50 (internal marks omitted) (quoting <u>Jeffrey</u> v. <u>Desmond</u>, 70 F.3d 183, 185 (1st Cir. 1995)). The factors the bankruptcy court should consider include:

> (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

<u>Jeffrey</u>, 70 F.3d at 185; <u>accord</u> <u>Ars Brook, L.L.C.</u> v. <u>Jalbert</u> (<u>In re Servisense.com, Inc.</u>), 382 F.3d 68, 72 (1st Cir. 2004).

In addition, "[T]he trustee's judgment is to be accorded some deference." <u>In re Healthco Int'l, Inc.</u>, 136 F.3d at 50 n.5 (internal marks omitted) (quoting <u>Hill</u> v. <u>Burdick</u> (<u>In re Moorhead Corp.</u>), 208 B.R. 87, 89 (B.A.P. 1st Cir. 1997)). Moreover, "'compromises are favored in bankruptcy.'" <u>In re Servisense.com, Inc.</u>, 382 F.3d at 71 (quoting <u>LeBlanc</u> v. <u>Salem</u> (<u>In re Mailman Steam Carpet Cleaning Corp.</u>), 212 F.3d 632, 635 (1st Cir. 2000)). In short, "'The responsibility of the bankruptcy judge, and ours on review, is . . . to . . . see whether the settlement falls below

the lowest point in the range of reasonableness.'" Id. at 71-72 (quoting In re Healthco Int'l, Inc., 136 F.3d at 51).

We conclude that the settlement in this case fell within the "range of reasonableness" and the bankruptcy court did not abuse its discretion in approving it. To be sure, $25,000 amounted to only a fraction of the damages[5] that Yacovi alleges resulted from what he claims was R & R's malpractice. Nonetheless, the settlement constituted a "definitive, concrete and immediate benefit[]" that the Trustee reasonably concluded outweighed the uncertainty and delay of litigation. See In re Healthco Int'l, Inc., 136 F.3d at 50. The Trustee was appropriately apprehensive about litigating the malpractice claims in light of (1) the fact that the arbitrator did not find that the employment agreement prohibited Yacovi from competing with URS, (2) the arbitrator's judgment that Yacovi's account of some relevant facts lacked credibility, and (3) the dearth of evidence that R & R actually advised Yacovi that he could solicit URS's clients without any legal repercussions. Although the Trustee made this decision using counsel from his own law firm, there is no indication that H & K offered deficient advice or otherwise undermined the Trustee's ability to analyze the malpractice claims.

We are mindful of our instruction that a court approving a settlement must set forth its rationale "in sufficient detail

_____

[5]Yacovi asserts that the damages include the arbitration award, which has a present value, with interest, in excess of $300,000.

-8-

[such] that a reviewing court [can] distinguish it from 'mere boilerplate approval' of the trustee's suggestions." In re Boston & Providence R.R. Corp., 673 F.2d 11, 12 (1st Cir. 1982) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434 (1968)); see also Jeremiah v. Richardson, 148 F.3d 17, 23 (1st Cir. 1998) ("The court's consideration . . . should demonstrate whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate."). In this case, the bankruptcy court offered only four sentences to explain its decision. Providing a more detailed statement would have been preferable, and under different circumstances a somewhat succinct explanation might prevent affirmance. However, where, as here, an experienced trustee conducts an adequate investigation of the claims and offers a satisfactory explanation for his settlement decision, the record supports the reasonableness of that decision, and the bankruptcy court receives briefing on the motion and holds a hearing, a cursory explanation, in and of itself, does not rise to the level of an abuse of discretion.[6]  Cf. In re Boston & Providence R.R. Corp., 673 F.2d at 12-13 (remanding where

---

[6]This is not to say that a bankruptcy court's failure to independently judge a settlement can be saved by a particularly persuasive explanation or thorough investigation by the trustee. To the contrary, we remind bankruptcy courts that they are required to independently analyze and judge all proposed settlements before granting approval pursuant to Bankruptcy Rule 9019. See Jeremiah, 148 F.3d at 23 (noting "the requirement that the court's judgment be independent").

"trustee's petition and supporting affidavit gave only the most cursory description and conclusory evaluation" and the lower court's "findings and order do not demonstrate an independent evaluation").  Indeed, in the very case this court relied on in issuing its caution against "boilerplate approval" of settlements, the Supreme Court acknowledged:

> If . . . the record contained adequate facts to support the decision of the trial court to approve the proposed compromises, a reviewing court would be properly reluctant to attack that action solely because the court failed adequately to set forth its reasons or the evidence on which they were based.  The deficiency in this case, however, is not a merely formal one.

Anderson, 390 U.S. at 437.

**B.      Yacovi Waived His Challenge to the Denial of the Motion to Abandon**

In addition to his objection to the settlement, Yacovi contends that "equity demands that the malpractice claims be abandoned."

On June 24, 2009, the bankruptcy court denied, without prejudice, Yacovi's motion to abandon.  Over three months later, on September 29, the Trustee filed a motion to approve the settlement. Yacovi filed an opposition brief to this motion, which included two sentences again requesting that the malpractice claims be abandoned.[7]  After a hearing on October 14, 2009, the bankruptcy

---

[7]These sentences read: "[A]bandonment of the malpractice claim is the only fair, equitable result and is in the best interest of the estate.  THEREFORE, Debtor asks that the Motion be denied and that given the Trustee's lack of any interest in seriously pursuing

-10-

court granted the Trustee's motion to approve. The next day, October 15, Yacovi filed a notice of appeal, pursuant to Federal Rule of Bankruptcy Procedure 8002(a), characterizing his appeal to the district court as "from the Order entered in this Action on 14 October 2009 granting the Motion filed by the Trustee to Approve Settlement." Also on October 15, Yacovi filed a Statement of Issues and Designation of Record on Appeal ("Statement of Issues on Appeal"). See Fed. R. Bankr. Pro. 8006. This filing failed to mention abandonment and framed the appellate issue solely as "[w]hether the Court erred in granting the Motion filed by the Trustee to Approve [S]ettlement." On appeal, the district court declined to address Yacovi's abandonment argument, saying the following:

> As set forth in the Debtor's Statement of Issues, the only question on appeal is whether the Bankruptcy Court erred in allowing the Trustee's Motion to Approve . . . . To the extent that the Debtor also seeks to reargue his Motion to Abandon the Malpractice Claim, that issue is not properly before this court. On June 24, 2009, the Bankruptcy Court denied the Debtor's Motion to Abandon . . . . The Debtor did not appeal that Order, and the time to appeal it has since passed.

In re Yacovi, 2010 WL 2106171, *3.

---

the malpractice claim that it be abandoned."

Yacovi contends that this passage constituted a cross-motion to abandon, and therefore the October 14 settlement approval also "acted as a denial of [that] cross-motion." Even if we accept this characterization of Yacovi's opposition brief, however, it would not explain his failure to mention abandonment in his Statement of Issues on Appeal and it would not materially impact our analysis of the waiver question. See infra.

-11-

There is a circuit split about whether the failure to list an issue in the statement of issues on appeal pursuant to Bankruptcy Rule 8006 results in a waiver of that issue. Compare Zimmerman v. Jenkins (In re GGM, P.C.), 165 F.3d 1026, 1032 (5th Cir. 1999) ("We . . . hold that, even if an issue is argued in the bankruptcy court and ruled on by that court, it is not preserved for appeal under Bankruptcy Rule 8006 unless the appellant includes the issue in its statement of issues on appeal."), and Snap-On Tools, Inc. v. Freeman (In re Freeman), 956 F.2d 252, 255 (11th Cir. 1992) ("An issue that is not listed pursuant to [Bankruptcy Rule 8006] and is not inferable from the issues that are listed is deemed waived and will not be considered on appeal."), with Office of the U.S. Tr. v. Hayes (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), 104 F.3d 1147, 1148 (9th Cir. 1997) (per curiam) ("We hold that Bankruptcy Rule 8006 does not limit a party's ability to appeal from a bankruptcy court's judgment. This document, filed with the trial court clerk, does not impact upon issue statements required by the court of appeals.")

We do not state a position on this circuit split. In his briefing to this court, Yacovi has presented neither adequate argument nor any citation to caselaw or even to a learned treatise. As a result, he has waived the issue in this court.

### III. Conclusion

For the foregoing reasons, we affirm.