26. The Retiree Committee Objection was ultimately withdrawn. (Docket Entry No. 4704 in Case No. 17-3283).
27. The COFINA Agent and its agents, attorneys, affiliates, advisors, and consultants, solely in such capacities (the "COFINA Agent Releasees"), have acted in good faith in connection with their evaluation of, and their conduct with respect to, the Adversary Proceeding, the Agreement in Principle, the Agreement, the Motion, and COFINA's Title III Case.
28. The Commonwealth Agent and the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "Committee"), its members, and each of their respective current and former officers, directors, agents, attorneys, employees affiliates, advisors, and consultants, solely in such capacities (collectively, the "Commonwealth Agent Releasees"), have acted in good faith in connection with their evaluation of, and their conduct with respect to, the Adversary Proceeding, the Agreement in Principle, the Agreement, the Motion, and COFINA's Title III Case.
29. The issues raised in the Commonwealth-COFINA Dispute are novel, complex, and of great importance to the people of Puerto Rico (as well as their fellow stakeholders) and present a mixed question of federal and Puerto Rico law.
30. The Commonwealth Agent has asserted a number of challenges to the constitutionality of the transfer of the Pledged Sales Taxes to COFINA under the Commonwealth Constitution's debt limit, debt *75 priority, and balanced budget provisions. Conversely, the COFINA Agent has asserted its own claims, including that the Legislative Assembly properly exercised its broad taxing and police powers to enact legislation transferring the disputed sales tax revenues to COFINA, that the debt limit provisions of the Commonwealth Constitution do not prohibit the transfer of the Pledged Sales Tax to COFINA, that the balanced budget provision of the Commonwealth Constitution does not preclude the transfer of sales tax revenues to COFINA, nor is it applicable to the COFINA Bonds, and that the plain language of Act 91 transferred ownership of the Pledged Sales Taxes to COFINA.
31. A motion to approve a compromise or settlement pursuant to Bankruptcy Rule 9019 requires a court to assess "whether the [proposed] settlement falls below the lowest point in the range of reasonableness." Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.), 382 F.3d 68, 71-72 (1st Cir. 2004). In the context of commercial bankruptcies, courts in the First Circuit consider four factors in assessing the reasonableness of a settlement: "(i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection [of the disputed funds]; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views ...." Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995). In evaluating the Settlement Agreement that is being presented for approval today, the Court is not required to "decide the numerous questions of law and fact raised by [the objectors]." In re Servisense.com, Inc., 382 F.3d at 71. Instead, the Court's role is more limited: it must "canvass the issues and [determine] whether the settlement falls below the lowest point in the range of reasonableness." Id. at 71-72.
32. Given the complex and novel issues involved, the divergent positions of the parties, and the protracted history of the dispute, the Commonwealth's likelihood of success in litigating the Commonwealth-COFINA Dispute is uncertain, and even if the Commonwealth were initially successful, the litigation would likely proceed to multiple appeals presenting their own risks and challenges. Accordingly, issues surrounding the probability of success weigh in favor of approving the Settlement.
33. The complexity of the Commonwealth-COFINA Dispute is also evidenced by the myriad of parties involved and the multiple suits already filed. The briefing in the Adversary Proceeding is extensive, with no fewer than six summary judgment motions having been filed by various parties that include, in addition to the Commonwealth Agent and the COFINA Agent, the Official Committee of Retirees of the Commonwealth of Puerto Rico, the COFINA Senior Bondholders' Coalition, the Ad Hoc Group of General Obligation Bondholders, the Mutual Fund Group, and the Puerto Rico Funds. All parties in interest asserted equally divergent views regarding, among other things, whether (a) Act 91 did or did not transfer to COFINA a present property interest in potential future tax revenues, (b) there was or was no "true sale" of future tax revenues by the Commonwealth to COFINA, (c) Act 91 did or did not transfer to COFINA the Commonwealth's "right to receive" future tax revenues, and (d) the COFINA structure, Act 91 and the purported sales tax revenue transfer are or are not constitutional.
34. Continued litigation of the Commonwealth-COFINA Dispute will invite additional delay for both the Commonwealth *76 and COFINA in progressing towards fiscal responsibility and access to the capital markets, significant expense, and further delay and inconvenience to the Commonwealth's and COFINA's stakeholders and ability of their creditors to receive any distribution on their claims. Accordingly, the complexity of litigation and expense, inconvenience, and delay attending the litigation weigh in favor of approving the Settlement.
35. The Settlement resolving the Commonwealth-COFINA Dispute provides certainty about the amounts available for the Commonwealth's debt service and other uses and resolves billions of dollars of claims that have been asserted against the Commonwealth by the COFINA Agent and COFINA creditors. This certainty will allow the Commonwealth to move forward with its Title III Case towards formulating a plan of adjustment that must make appropriate provisions for the needs of the people of Puerto Rico, revival of its economy, and distributions to its creditors. The interests of the Commonwealth's creditors and citizens are not served by protracted litigation that could delay payments on claims and the ability of the Commonwealth to move forward with its revitalization. Moreover, there would be significant negative consequences for the Commonwealth and its stakeholders if the Commonwealth did not prevail in litigating the Commonwealth-COFINA Dispute, as the Commonwealth would be deprived of access to any portion of the approximately $ 783 million Pledged Sales Tax Base Amount, which annual amount increases over time.
36. The conclusion that the interests of the Commonwealth's creditors are served by the Settlement Agreement is buttressed by the decision of significant Commonwealth creditor groups to not object or to withdraw their objection to the Settlement Agreement. The interests of the Commonwealth and all of its stakeholders are served by a final resolution of the question of Commonwealth access to the Pledged Sales Tax Base Amount and elimination of the chance of complete inaccessibility of such funds pending full payment of existing COFINA bonds.
37. Based upon the applicable factors relating to the Court's consideration and approval of a compromise and settlement, the Settlement falls above the lowest point in the range of reasonableness, and, therefore, is fair and reasonable and its approval is in the best interest of the Commonwealth and its stakeholders.
38. The Court is satisfied that terms of the Commonwealth-COFINA settlement are reasonable as a legal and factual matter in light of the complex issues and risks presented by the continued litigation of the Commonwealth-COFINA dispute, and that the terms of the Agreement satisfy the requirements for approval under Bankruptcy Rule 9019. That is not to say that the Settlement Agreement is perfect. It is a compromise, and the Court has heard the concerns of numerous creditors and other stakeholders who believe that the Settlement Agreement unfairly favors one side or the other of the Commonwealth-COFINA dispute. The passionate opposition from stakeholders exists because the Settlement Agreement resolves extraordinarily complicated litigation which, regardless of the result, would have had deeply significant consequences for COFINA, its creditors, the Commonwealth government, and the people of Puerto Rico. Judicial rulings on the issues presented in the Commonwealth-COFINA lawsuit also inevitably would have resulted in many months, if not years, of appeals and further litigation, along with the attendant litigation costs and delays to the restructuring efforts of the Commonwealth *77 and COFINA, delaying still further the opportunities for Puerto Rico to set its economy on a firmer footing going forward and regain access to the capital markets. The compromise proposed in the Motion, which has been negotiated and proposed by the two entities that assert the claims to ownership of the sales tax revenues that are the subject of the Commonwealth-COFINA Dispute, will avoid those costs and remove the substantial risk to the Commonwealth's economic prospects that COFINA and the COFINA bondholders ultimately would have prevailed in the Commonwealth-COFINA litigation.
39. Additionally, the record demonstrates that the proposed resolution of the Commonwealth-COFINA dispute was the product of a genuine adversarial negotiation between agents who were properly authorized by the Oversight Board and the Court to negotiate as fiduciaries for the Commonwealth on one hand and COFINA on the other. Those negotiations resulted in the initial Agreement in Principle, which contained the basis for the Settlement Agreement that is now before the Court. Following the Agreement in Principle, negotiations were continued by the COFINA Agent on behalf of COFINA and the Oversight Board on behalf of the Commonwealth, ultimately resulting in the Settlement Agreement. Accordingly, objections based on an alleged lack of bona fide adversarial negotiations are unfounded and are overruled. The Court's review of the record shows that the Settlement Agreement is the product of a genuine negotiation process that was overseen by the Court-appointed mediation team of distinguished federal judges.
40. The Court turns now to a deeper explanation of the factors prescribed by the Court of Appeals for the First Circuit in Jeffrey v. Desmond. The first factor considers the probability of success for the Commonwealth in the underlying Commonwealth-COFINA litigation. See Jeffrey, 70 F.3d at 185. In the absence of a consensual resolution of the Commonwealth-COFINA dispute, a litigated outcome would likely have produced an "all-or-nothing" result. If the litigation had proceeded, the result for the Commonwealth could have been significantly worse than the compromise presented in the Settlement Agreement that is now before the Court. Specifically, the worst case outcome for the Commonwealth would have been that none of the Pledged Sales Tax revenue would be available to the Commonwealth for use toward essential services or debt service until all of the existing COFINA debt was paid off in accordance with the current terms of that debt. Because this was a possibility, the suggestions of some objectors and commenters that the Commonwealth should simply refuse to pay anything to COFINA at all or hold out for a materially more favorable negotiated result for the Commonwealth are not realistic because the Commonwealth would not be guaranteed a win if the litigation were to continue. Both sides presented strong arguments in the litigation, and success was far from certain for the Commonwealth. This factor therefore indicates that it is reasonable for the Commonwealth to seek to settle the litigation and protect itself and its creditors against the worst possible outcome regarding rights to the disputed tax revenue.
41. The second factor set forth in Jeffrey requires the Court to consider the difficulties, if any, to be encountered in the matter of collection. 70 F.3d at 185. This is not a significant issue here, as the disputed revenue is sales taxes that are expected to continue to be collected on a steady basis. The issue here is whether the settlement provides for a division of those revenues *78 that is within the range of reasonable compromises.
42. The third Jeffrey factor, which requires consideration of "the complexity of the litigation involved, and the expense, inconvenience[,] and delay attending it," 70 F.3d at 185, is quite significant here and favors a finding that the Settlement Agreement is reasonable. The Interim Fee Applications that have been filed with the Court reflect the expense involved in litigating the Commonwealth-COFINA dispute, and the complexity of the dispute is apparent from the arguments presented in court and in the voluminous submissions that were filed in connection with the multiple cross-motions for summary judgment in the Commonwealth-COFINA lawsuit, Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico v. Whyte, Adv. Proc. No. 17-257. Given the all-or-nothing nature of the most likely potential outcomes of the Commonwealth-COFINA dispute and the accompanying risk of an outcome adverse to the Commonwealth and, whatever the outcome, of appeals and petitions for Supreme Court review, it is both rational and reasonable for the Oversight Board to compromise as it has opted to do in the Settlement Agreement before the Court. The compromise saves litigation expenses, eliminates delay, and, most important, provides the Commonwealth with access to a portion of the pledged sales tax revenues, which have not been available to the Commonwealth at all under the current COFINA structure. The Court therefore concludes that the proposed Settlement Agreement is well within the range of reasonable alternatives that are beneficial to the Commonwealth.
43. The Court also considers, as part of its analysis of the reasonableness of the Settlement Agreement, the paramount interest of the creditors and accords proper deference to their reasonable views. Jeffrey, 70 F.3d at 185. Here, the Court finds that the Settlement Agreement is in the best interests of the Commonwealth's creditors, including its employees, retirees, and recipients of public benefits and services, as it provides a certainty that the Commonwealth and its creditors will receive a substantial portion of the sales tax revenues that are the subject of the Commonwealth-COFINA Dispute, and wholly negates the risk of a judgment in that litigation that might have left the Commonwealth with none of the Pledged Sales Taxes for decades to come. Creditors will also benefit from relief from the costly litigation that would otherwise continue and eat away at the financial resources available to service the Commonwealth's obligations.
44. Although many objectors and commenters are deeply and sincerely concerned that the Commonwealth may not ultimately have enough resources to reorganize its own finances and provide for essential services and economic growth, these concerns are not pertinent to the one question that is before the Court on this motion practice: the reasonableness of this settlement. The Court must decide whether the compromise with respect to this particular asset is reasonable in the context of the dispute about this asset. Its value and the relative strengths of the Commonwealth's and COFINA's legal claims to it are not measured by reference to the Commonwealth's other needs. The Jeffrey requirement that the Court give proper deference to the reasonable views of creditors does not require the Court to weigh concerns about the Commonwealth's overall financial prospects in the evaluation of the reasonableness of the settlement.
45. The question of whether the Commonwealth can gather or generate sufficient additional resources to propose a feasible plan of adjustment is one to be *79 addressed in the future and does not weigh in the evaluation of this Settlement. PROMESA and the Bankruptcy Rules do not impose a "feasibility" requirement for the approval of settlement agreements,[5] and section 201 of PROMESA, which has been cited by some objectors, concerns the content and certification of fiscal plans, not the approval of settlements.
III. DECRETAL PROVISIONS
NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:
46. The Motion is GRANTED on the terms set forth in this Order, and the Objections (including those orally presented) not otherwise withdrawn and all other objections to the Motion are overruled in their entirety.
47. The compromise and settlement embodied in the Agreement attached hereto as Schedule 1 is APPROVED in all respects.
48. The Commonwealth is authorized take any action that is necessary or appropriate to give effect to this Order.
49. The COFINA Agent is authorized to enter into the Agreement on behalf of COFINA and take any action that is necessary or appropriate to give effect to this Order; and such actions taken by the COFINA Agent pursuant to such authority are hereby deemed a good faith exercise of her duties under the Procedures Order.
50. On the Effective Date, the Agreement fully, finally, and forever resolves and releases, except to the extent necessary to enforce the Agreement or the COFINA Plan, all claims against and ownership interests in the COFINA Pledged Taxes, the Pre-FY2019 BNYM Deposits and the FY2019 BNYM Deposits, including, without limitation, all claims, causes of action, and counterclaims (i) that were or could have been asserted consistent with the Stipulation and (ii) concerning or relating to the COFINA Pledged Taxes or the Commonwealth-COFINA Dispute (as expanded by the Mediation Scope Order); provided, however, that, except as otherwise provided in the COFINA Plan, nothing herein or in the Agreement shall affect any rights, claims, or interests that creditors of the Commonwealth may have with respect to the COFINA Pledged Taxes that are (x) not allocated to COFINA consistent with the Agreement in Principle and (y) received by the Commonwealth. Notwithstanding the foregoing proviso in this decretal paragraph of this Order, the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred from bringing or pursuing any and all claims against the Commonwealth Agent Releasees (i) in the case of the creditors of the Commonwealth and the insurers of debt of the Commonwealth, arising out of their capacities as creditors of the Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the COFINA structure, the COFINA Pledged Taxes, or the Pre-FY2019 BNYM Deposits, and (ii) in the case of the Commonwealth, in any way related to the COFINA structure, the COFINA Pledged Taxes, or the Pre-FY2019 BNYM Deposits.
51. Notwithstanding the proviso in Paragraph 50 of this Order, the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred from bringing or pursuing any and all claims against the COFINA Agent, COFINA (including its *80 successor in interest), its current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members, any creditors or insurers of debt of COFINA, and the Commonwealth Agent Releasees (i) in the case of the creditors of the Commonwealth and the insurers of debt of the Commonwealth, arising out of their capacities as creditors of the Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits, and (ii) in the case of the Commonwealth, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits.
52. The releases in Paragraphs 50 and 51 of this Order shall not release any claims that a beneficial holder of an insured COFINA Bond or BNYM, as trustee for the Existing Securities, may have against the insurer of such Existing Securities (or any claims that such insurer may have against the beneficial holder of such Existing Securities) under or relating to the policy of insurance issued by such insurer except as the COFINA Plan may otherwise provide and there shall be no release of any claims by any party against the insurers or underwriters of the Existing Securities or the general obligation bonds issued by the Commonwealth, including their current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members.
53. Any claims by COFINA, against any underwriter of the COFINA Bonds (such claims, the "COFINA Underwriter Claims") shall not cause the Commonwealth or any of its instrumentalities to incur any liability with respect to the COFINA Underwriter Claims in the nature of contribution, reimbursement, or indemnification, however denominated or described, in connection with, arising out of, or in any way related to such claims (the "Covered Claims"). Any underwriter of the COFINA Bonds against which a COFINA Underwriter Claim has been asserted shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Covered Claim based upon, related to, or arising out of the COFINA Underwriter Claims against that underwriter, whether such Covered Claim is asserted in a court, an arbitration, an administrative agency or forum, or in any other manner; provided, however, that COFINA, any insurer of Existing Securities, and any holder of Existing Securities, as applicable, shall reduce and credit against any judgment they may obtain against any underwriter of the Existing Securities the amount of any Covered Claim which is determined and awarded by a court of competent jurisdiction in any action involving the prosecution of the COFINA Underwriter Claims against such underwriter.
54. On the Effective Date, to the fullest extent permissible under applicable law, (i) the COFINA Releasees and (ii) the Commonwealth Agent Releasees, shall be released from liability for all Claims and Causes of Action (both as defined in the COFINA Plan [Case No. 17-3283, ECF No. 4392] ) (as if such Causes of Action were against the COFINA Agent Releasees or the Commonwealth Agent Releasees, as applicable) with respect to the Adversary Proceeding, the COFINA Plan, and the mediation related to the foregoing.
55. On the Effective Date, to the fullest extent permissible under applicable law, *81 the Commonwealth shall be released from all liability from all Claims and Causes of Action held by any Creditor (as defined in the COFINA Plan), solely in such capacity, arising from or relating to the relationship of the Commonwealth and COFINA, including, without limitation, any Claim or Cause of Action arising from or relating to the commencement of the Adversary Proceeding and pendency thereof, the compromise and settlement of Bank of New York Mellon v. COFINA, Adv. Proc. No. 17-00133, and the allocation of funds in accordance with Section 2.1 of the COFINA Plan.
56. Except as otherwise provided by the COFINA Plan, no costs (including professional fees) incurred by COFINA or its stakeholders (including owners of Existing Securities and insurers of Existing Securities) with respect to COFINA (including the litigation of the Commonwealth-COFINA Dispute, the COFINA Plan, or the structuring of the COFINA Bonds) shall be borne by the Commonwealth and shall not in any way affect the Commonwealth Portion; provided, however, that nothing in this Order or the Agreement shall affect the right of the COFINA Agent and her professionals to be compensated or reimbursed in accordance with the terms and provisions of that certain Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket Entry No. 3269 in Case No. 17-3283) and other orders of the Court.
57. To the extent necessary, pursuant to PROMESA section 305, the Oversight Board has granted consent to this Court to exercise jurisdiction over the property and revenues of the Commonwealth that are, pursuant to the Settlement of the Commonwealth-COFINA Dispute, necessary to the entry of this Order. The transfer of the Commonwealth Portion pursuant to the COFINA Plan is appropriate and, subject to the occurrence of and upon the Effective Date of the COFINA Plan, is binding and specifically enforceable against COFINA and the Commonwealth, their respective creditors and all parties in interest in accordance with the COFINA Plan, including, without limitation, because the transfer of the Commonwealth Portion created in the Commonwealth an ownership interest in such property.
58. Except as expressly set forth in the A & R Plan Support Agreement, certain parties thereto reserve their right, if any, to contest in the Title III Case the Commonwealth's (a) use, or direction of the use, of monies received by the Commonwealth or to be received by the Commonwealth and (b) deposit or other use, or direction of the use, of such monies.
59. On the Effective Date, the releases provided in Section 5(b) of the Agreement shall be deemed to be granted in favor of the Commonwealth Agent Releasees.
60. The terms and conditions of this Order will be immediately effective and enforceable upon its entry.
61. The Court retains exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Memorandum Opinion and Order.
SO ORDERED.
Attachment
Schedule 1
Settlement Agreement
EXECUTION VERSION
SETTLEMENT AGREEMENT
SETTLEMENT AGREEMENT (the "Agreement"), dated October as of 19, 2018, between the Financial Oversight and *82 Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), and (ii) Bettina M. Whyte, in her capacity as the court-appointed agent (the "COFINA Agent") of the Oversight Board, as representative of the Puerto Rico Sales Tax Financing Corporation ("COFINA"). The Oversight Board and the COFINA Agent are sometimes hereinafter referred to individually as a "Party" and collectively as the "Parties".
RECITALS
A. On May 3, 2017, the Commonwealth commenced a proceeding in the United States District Court for the District of Puerto Rico (the "Title III Court") under title III of the Puerto Rico Oversight, Management and Financial Stability Act ("PROMESA"), which proceeding was assigned Case No. 17-BK-3283 (the "Commonwealth Title III Case").
B. On May 5, 2017, COFINA commenced a proceeding in the Title III Court under title III of PROMESA, which proceeding was assigned Case No. 17-BK-3284 (the "COFINA Title III Case" and, collectively with the Commonwealth Title III Case and the other cases filed under title III of PROMESA by other instrumentalities of the Commonwealth as of the date of this Agreement, the "Title III Cases").
C. Prior to the commencement of the Title III Cases, certain parties asserted various claims relating to COFINA, including that (i) the formation and use of COFINA was unconstitutional under the Puerto Rico Constitution, and (ii) the present and future revenues and collections generated by the five and one-half percent (5.5%) of the sales and use taxes ("SUT") imposed by the Commonwealth (the "COFINA Pledged Taxes"), purportedly pledged by COFINA to secure the various series of bonds issued pursuant to that certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions (collectively, the "Bond Resolutions"), and set forth on Schedule 1 hereto (collectively, the "Existing Securities") and other obligations of COFINA, constituted "available resources" of the Commonwealth pursuant to Article VI, Section 8 of the Puerto Rico Constitution and must be used for the payment of "public debt" as specified therein. Such claims were stayed pursuant to PROMESA prior to any court issuing a ruling on the merits of such claims.
D. Subsequent to the filing of the COFINA Title III Case, the Oversight Board sought an orderly process to resolve the disputes relating to COFINA and the ownership of the COFINA Pledged Taxes. On August 10, 2017, the Title III Court entered that certain Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute [Docket No. 996][1] (the "Stipulation"), executed by various stakeholders of the Commonwealth and COFINA, pursuant to which, under certain circumstances, the Oversight Board delegated the authority to litigate to a determination or compromise and settle "whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt... are property of the Commonwealth or COFINA under applicable law" (the "Commonwealth- *83 COFINA Dispute"), Stipulation ¶ 4, to the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "Commonwealth Agent," and collectively with the COFINA Agent, the "Agents") and the COFINA Agent on behalf of the Commonwealth and COFINA, respectively. The Stipulation envisioned the resolution of the Commonwealth-COFINA Dispute by December 15, 2017.
E. On September 8, 2017, the Commonwealth Agent commenced an adversary proceeding styled The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico as agent of the Financial Oversight and Management Board for Puerto Rico as representative of The Commonwealth of Puerto Rico v. Bettina Whyte, as agent of The Financial Oversight and Management Board for Puerto Rico as representative of The Puerto Rico Sales Tax Financing Corporation, Adv. Proc. No. 17-257-LTS (the "Adversary Proceeding"), by filing a complaint against COFINA asserting various claims and causes of action, including seeking declarations that Act 91 did not transfer a present ownership in future SUT revenues to COFINA and that Act 91 is unconstitutional because the substantial result of the COFINA structure was evasion of Puerto Rico's Constitutional debt limit, Constitutional balanced budget provision, and Constitutional debt priority.
F. On September 15, 2017, the COFINA Agent filed an answer and counterclaims against the Commonwealth asserting various claims and causes of action, including seeking declarations that Act 91 is constitutional and that the stream of COFINA Pledged Taxes and the Dedicated Sales Tax Fund, as defined in the Bond Resolutions, are property of COFINA. Additionally, various Permitted Intervenors, as defined in the Stipulation, asserted various claims and causes of action (all claims and causes of action filed in the Adversary Proceeding, the "Commonwealth-COFINA Claims").
G. Pursuant to the Stipulation, mediation of the Commonwealth-COFINA Dispute, led by Mediation Team Leader Hon. Barbara J. Houser, began in September 2017 and included the participation of the Agents and the Permitted Intervenors.
H. On September 20, 2017, Hurricane Maria made landfall on Puerto Rico devastating the island and suspending certain proceedings related to the Commonwealth-COFINA Dispute. As a result, the Agents modified their litigation schedule with the consent and approval of the Title III Court, with dispositive motions due to be filed by January 31, 2018, and a trial, if necessary, to be held in early March 2018.
I. On November 3, 2017, the Title III Court entered an order [Docket No. 1612] that granted the protections of 48 U.S.C. § 2125 (the "Immunity Protections") to the Agents and their respective professionals and employees with respect to all actions taken in good faith to carry out their duties under the Stipulation.
J. On December 21, 2017, the Title III Court entered an order [Adv. Pro. No. 167][2] (the "Initial Scope Order") clarifying the scope of the Agents' authority and dismissing, without prejudice, certain of the Commonwealth-COFINA Claims.
K. On January 24, 2018, the Title III Court entered an order [Adv. Pro. No. 257] (the "Amended Scope Order") granting the Commonwealth Agent's motion to reconsider the Initial Scope Order and allowed the Commonwealth Agent to amend certain claims and causes of action that had been dismissed, without prejudice, *84 pursuant to the Initial Scope Order (all claims and causes of action in the Adversary Proceeding that were dismissed, without prejudice, following the entry of the Amended Scope Order, the "Dismissed Commonwealth-COFINA Claims," and all claims and causes of action in the Adversary Proceeding that were not dismissed, without prejudice, following the entry of the Amended Scope Order, the "Surviving Commonwealth-COFINA Claims").
L. On February 10, 2018, the Title III Court entered an order [Adv. Pro. No. 284] (the "Mediation Scope Order") (i) authorizing the Agents to mediate and attempt to compromise and settle the Commonwealth-COFINA Claims (except for any claim or cause of action that is owned by a creditor and not owned by the Commonwealth or COFINA, as applicable) pursuant to the terms and conditions of the Stipulation relating to the settlement of the Commonwealth-COFINA Dispute, and (ii) granting the Immunity Protections to the Agents, their professionals and employees with respect to any actions taken in good faith pursuant to the authority granted.
M. On or around February 21, 2018, the Agents and certain Permitted Intervenors each filed competing motions for summary judgment on the Surviving Commonwealth-COFINA Claims (the "Motions for Summary Judgment").
N. On February 26, 2018, the COFINA Agent, joined by certain COFINA stakeholders, filed a motion to certify the Surviving Commonwealth-COFINA Claims to the Puerto Rico Supreme Court (collectively, the "Certification Motions"), which were opposed by, among others, the Commonwealth Agent and the Oversight Board citing, among other things, the mixed questions of federal and Puerto Rico law and the need for an expeditious conclusion of the Commonwealth-COFINA Dispute.
O. On April 10, 2018, the Title III Court heard argument with respect to the Motions for Summary Judgment.
P. On May 14, 2018, certain of the Permitted Intervenors, consisting of significant holders and insurers of general obligations of the Commonwealth and significant holders and insurers of senior bonds of COFINA announced they had reached a tentative settlement of the Commonwealth-COFINA Dispute (the "GO-COFINA Senior Agreement"), which agreement had been presented to, but was not supported by, the Agents, the Oversight Board, or AAFAF, as defined below.
Q. On May 14, 2018, the Oversight Board announced that it would not proceed with the GO-COFINA Senior Agreement, but that, consistent with its authority and the terms and provisions of paragraph 4(n) of the Stipulation, the Oversight Board would seek to negotiate with creditors on terms that were affordable, sustainable, and consistent with certified fiscal plans for the island and its instrumentalities.
R. On May 24, 2018, the Title III Court entered an order [Adv. Pro. No. 483] denying the Certification Motions.
S. On June 5, 2018, the Agents filed a joint informative motion with the Title III Court [Adv. Pro. No. 484] (the "Joint Urgent Motion") (i) disclosing that, on June 5, 2018, the Agents had reached an agreement in principle (the "Agreement in Principle") to resolve the Commonwealth-COFINA Dispute and all other claims and causes of action that may be settled by the Agents pursuant to the Stipulation and the Mediation Scope Order, including, without limitation, by allocating one hundred percent (100%) of the cash held in trust by Bank of New York Mellon ("BNYM"), as trustee for the Existing Securities, to COFINA
*85 and the COFINA Pledged Taxes to COFINA and the Commonwealth in the amounts of fifty-three and sixty-five one hundredths percent (53.65%) and forty-six and thirty-five one hundredths percent (46.35%), respectively, of the existing pledged sales tax base amount with COFINA retaining its "first dollars" priority rights thereto and (ii) requesting that the Title III Court hold its ruling on the Motions for Summary Judgment in abeyance for sixty (60) days until August 4, 2018 (as such period may be extended or renewed, the "Abeyance Period"), to allow the Agents to document a formal settlement agreement and ensure that certain specified conditions to effectiveness of the Agreement in Principle would be satisfied. The Agreement in Principle was thereafter filed on the docket on June 7, 2018 [Adv. Pro. No. 486-1].
T. The Agreement in Principle also provides that, unless otherwise extended in writing by the Agents, the understanding reached therein ("except for the section "Post-July 1, 2018 Collection of SUT") shall terminate automatically unless the Agents are able to agree on the terms of definitive documentation within sixty (60) days of execution of the Agreement in Principle. In connection with the serial extensions of the Abeyance Period, the Agents informally agreed not to terminate the Agreement in Principle.
U. On June 12, 2018, the Title III Court entered an order [Adv. Pro No. 492] granting the Joint Urgent Motion and holding a ruling on the Motions for Summary Judgment in abeyance until August 4, 2018. Pursuant to subsequent consensual motions by the Agents, the Title III Court has entered orders [Adv. Pro. Nos. 539, 543] extending the Abeyance Period up to and including October 3, 2018.
V. Pursuant to orders of the Title III Court, dated June 9, 2018 [Adv. Pro. No. 525] and July 24, 2018 [Adv. Pro. No. 534], and consistent with the Agreement in Principle, Bank of New York Mellon ("BNYM"), as trustee for the holders of Existing Securities, has placed into escrow funds received on deposit (i) prior to July 1, 2018 in the debt service, reserve and such other accounts and any earnings thereon (the "Pre-FY2019 BNYM Deposits") and (ii) on or after July 1, 2018 to the debt service, reserve and such other accounts (the "FY2019 BNYM Deposits").
W. On July 25, 2018, the Commonwealth Agent informed the Title III Court and parties in interest that it continued to support the settlement reached with the COFINA Agent, but the Commonwealth Agent had concerns about the feasibility of moving forward to further document the Agreement in Principle in light of the Oversight Board's then most recent fiscal plan, certified on Jun. 29, 2018.
X. On August 8, 2018, and following two weeks of mediation led by the Mediation Team, the Oversight Board announced that it had reached an agreement, predicated upon the allocation of ownership of the Pre-FY2019 BNYM Deposits and COFINA Pledged Taxes developed by the Agents and set forth in the Agreement in Principle, with holders and insurers of senior and junior bonds of COFINA, with respect to the terms of new securities to be issued pursuant to a consensual plan of adjustment for COFINA.
Y. On August 13, 2018, the Commonwealth Agent filed an Informative Motion with respect to the Oversight Board's announcement on August 8, 2018 [Adv. Pro. No. 540], wherein the Commonwealth Agent expressed continuing concerns about the feasibility of the agreement in Principle in light of the then most recent certified fiscal plan.
*86 Z. By order, dated September 27, 2018 [Adv. Pro. No. 544], the Title III Court terminated the Motions for Summary Judgment, without prejudice to restoration of such motions on or after October 3, 2018, in light of the Agreement in Principle and ongoing discussions regarding a plan of adjustment for COFINA(the "SJ Termination Order").
AA. As of September 30, 2018, there is approximately $ 1,203,272,884.15 and $ 366,835,440.45 of COFINA Pledged Taxes in Pre-FY2019 BNYM Deposits and FY2019 BNYM Deposits, respectively.
BB. Paragraph 4(j) of the Stipulation provides that the Oversight Board may seek approval of a proposed settlement negotiated by the Agent that allocates the Pledged Sales Taxes between COFINA and the Commonwealth, but that does not provide for how the Commonwealth would distribute such assets to creditors, by filing a motion in the Commonwealth Title III Case provided that such motion would be heard on at least forty-five (45) days notice and contemporaneously with a Title III plan of adjustment for COFINA.
CC. Paragraph 4(n) of the Stipulation provides in pertinent part that the Oversight Board shall remain the only party authorized by PROMESA to propose a title III plan of adjustment and, to carry out that power and duty, the Oversight Board may, at any time, propose title III plans of adjustment for the Commonwealth and COFINA that incorporate a settlement of the Commonwealth-COFINA Dispute, developed by the Agents, or developed by the Oversight Board, and the Oversight Board may negotiate and mediate with creditors to achieve such settlement of the Commonwealth-COFINA Dispute.
DD. On August 29, 2018, the Oversight Board, the Commonwealth, COFINA, the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") and various parties to the Commonwealth-COFINA Dispute executed that certain Plan Support Agreement, which agreement was amended and restated by that certain Amended and Restated Plan Support Agreement (the "Amended PSA"), dated as of September 20, 2018. Attached to the Amended PSA as Exhibit "C" is a term sheet the "Term Sheet"), and hereto as Exhibit "A", which term sheet incorporates the allocation of the COFINA Pledged Taxes developed by the Agents in the Agreement in Principle as a foundation and sets forth, among other things, the terms of the securities to be issued pursuant to a plan of adjustment for COFINA (the "COFINA Plan").[3]
NOW, THEREFORE, after good faith, arm's-length negotiations between the Parties, and after consideration by the Parties of, among other things, the GO-COFINA Senior Agreement and the Agreement in Principle, together with the merits and likelihood of success of the various Commonwealth-COFINA Claims and the risk of further litigation, and in consideration of the foregoing recitals and of the mutual agreements, covenants and releases set forth herein, and after considering what result is best for the Commonwealth and COFINA, as opposed to what result is best for any particular type of creditor of the Commonwealth or COFINA, and after considering the standard for settlement set forth in Protective Committee of Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), and for other *87 good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the Parties, and by the authority granted to the Parties pursuant to the Stipulation, and in the exercise of their respective judgment in accordance with the terms of the Stipulation, the Parties hereto agree to settle the Commonwealth-COFINA Dispute and all other claims and causes of action that may be settled by the Parties pursuant to the Stipulation and/or the Mediation Scope Order as follows:
AGREEMENT
1. Recitals. The Recitals above are an integral part of this Agreement and are incorporated herein by reference.
2. Settlement Motion. On or prior to October 19, 2018, the Oversight Board on behalf of the Commonwealth, shall file the Settlement Motion in the Commonwealth Title III Case in accordance with Bankruptcy Rule 9019 seeking the approval of the compromise and settlement of the Commonwealth-COFINA Dispute set forth in the Agreement in Principle to the extent incorporated in Section 3 hereof and in the Term Sheet. The Parties shall use commercially reasonable efforts to promptly take any action, and negotiate in good faith definitive documentation, in each case, that is required to effectuate the compromise and settlement set forth in this Agreement, including to (a) support this Agreement and (as applicable) make the filings with the Title III Court contemplated by this Agreement, including the COFINA Plan and the Settlement Motion, and (b) not take any action that would interfere with, delay, or postpone the Title III Court's consideration or approval of (x) this Agreement or (y) the filings with the Title III Court contemplated by this Agreement, including, without limitation, the COFINA Plan, the Settlement Motion, and the entry of orders of the Title III Court approving this Agreement and confirming the COFINA Plan (collectively, the "Approval Orders") Consideration and confirmation of the COFINA Plan in the COFINA Title III Case shall be contemporaneous with consideration and approval of the Settlement Motion in the Commonwealth Title III Case; provided, however, that, in all circumstances, the effective date of the order granting the Settlement Motion shall be contemporaneous with, and its contemporaneous occurrence shall be a condition to, the effective date of the COFINA Plan (the "Effective Date").
3. Settlement Terms.
(a) The Commonwealth-COFINA Dispute shall be compromised and settled pursuant to the Settlement Motion and the COFINA Plan, with (i) COFINA being granted ownership of the COFINA Portion, and (ii) the Commonwealth being granted ownership of the Commonwealth Portion; provided, however, that, except as expressly set forth in the Term Sheet (a) one hundred percent (100%) of the Pre-FY2019 BNYM Deposits are held by BNYM, as the COFINA bond trustee, for the benefit of the bondholders in accordance with the Adversary Proceeding and such other orders entered in connection therewith; provided, however, that, (i) of Seventy-Eight Million Three Hundred Fifty-Five Thousand Eight Hundred and Thirty-Seven Dollars and Sixty-Three Cents ($ 78,355,837.63) of the Pre-FY2019 BNYM Deposits, (x) Thirty-Three Million Three Hundred Fifty-Five Thousand Eight Hundred Thirty-Seven Dollars and Sixty-Three Cents ($ 33,355,837.63) shall be distributed to the Commonwealth, (y) Five Million Dollars ($ 5,000,000.00) shall be allocated to fund an operating expense fund for COFINA, and (z) Forty Million Dollars ($ 40,000,000.00) shall be allocated to the Taxable Election Cash distributable under the COFINA Plan and if the Taxable *88 Election Cash distributable under the COFINA Plan is less than Sixty Million Dollars ($ 60,000,000.00), the Tax Election Remainder Amount shall be distributed (I) first , to further fund the operating expense fund for COFINA up to an additional Ten Million Dollars ($ 10,000,000.00), and (II) second , to the extent of any further remainder, to be distributed evenly to COFINA, on the one hand, to increase the COFINA Cash Available for Distribution and increase recoveries to all COFINA bondholders, and the Commonwealth, on the other hand, (b) one hundred percent (100%) of the FY2019 BNYM Deposits, on a first dollars basis up to the amount of fifty-three and sixty-five one hundredths percent (53.65%) of the PSTBA, plus any earnings thereon (the "COFINA FY2019 BNYM Deposits") held by BNYM in accordance with the Adversary Proceeding and such other orders entered in connection therewith, will, on the Effective Date, be the exclusive property of COFINA and will be distributed to COFINA for purposes of distribution in accordance with the COFINA Plan of Adjustment and (c) any FY2019 BNYM Deposits net of the COFINA FY2019 BNYM Deposits, shall be distributed in its entirety to the Commonwealth.
(b) Unless (i) approval of the Settlement Motion is denied by the Title III Court or (ii) the Effective Date does not occur, the effective date of the compromise and settlement (the "Compromise Date") shall be retroactive to July 1, 2018 and, in addition to receipt of the Pre-FY2019 BNYM Deposits, net of amounts allocated pursuant to the provisions of the Term Sheet, and the COFINA FY2019 BNYM Deposits on the Effective Date, COFINA will own, and will be entitled to receive, the COFINA Portion commencing as of FY2019. Until the Effective Date, all revenues attributable to the PSTBA, including, without limitation, the COFINA Portion and the Commonwealth Portion, shall be maintained in accordance with orders of the Title III Court entered in the COFINA Title III Case, the Commonwealth Title III Case, the Adversary Proceeding and the Interpleader Action.
(c) On the Effective Date, pursuant to the Settlement Order and the Confirmation Order, which orders shall amend and supersede such orders of the Title III Court entered in the COFINA Title III Case, the Commonwealth Title III Case, the Adversary Proceeding and the Interpleader Action to the extent that such orders are inconsistent therewith, (1) BNYM shall make distributions as set forth in the Term Sheet, (2) the Adversary Proceeding shall be dismissed, with prejudice, and all other claims and causes of action asserted therein by the Commonwealth Agent, the COFINA Agent and the Permitted Intervenors, as defined in the Adversary Proceeding, shall be deemed dismissed, with prejudice, and the Commonwealth Agent and the COFINA Agent and their respective professionals shall be deemed to have satisfied any and all of their respective obligations in connection with the Adversary Proceeding and the COFINA Agent shall be deemed to have been released from any and all liabilities associated therewith, (3) the Interpleader Action will be dismissed, with prejudice, and all other claims and causes of action asserted therein shall be dismissed, with prejudice, and the funds deposited in connection therewith shall be distributed in accordance with the terms and provisions of this Term Sheet.
4. Conditions Precedent. This Agreement shall become effective upon the following conditions precedent having been satisfied or waived by the Parties:
*89 (i) The Approval Orders have each been entered, are unstayed, and as to which orders (A) the deadline to file a notice of appeal or petition for certiorari has lapsed (including any extension provided by Bankruptcy Rule 8002(b)(1) ) and no appeal or petition is pending or, (B) if the subject of a timely appeal or petition, no stay, suspension, or injunction precluding effectiveness has been granted and is continuing;
(ii) The Commonwealth will have provided protection of COFINA's property through legislation and covenants to be included for the benefit of COFINA and its creditors in the COFINA Plan and the Definitive Documentation. Without in any way limiting the foregoing, but subject to the occurrence of the Effective Date, the Commonwealth will own and will be entitled to receive the Commonwealth Portion; and
(iii) Entry of the Approval Order approving this Agreement in the Commonwealth Title III Case shall be a condition to confirmation of the COFINA Plan and entry of the Approval Order confirming the COFINA Plan in the COFINA Title III Case shall be a condition to entry of the Approval Order in the Commonwealth Title III Case.
5. Releases.
(a) On the Effective Date, this Agreement fully, finally, and forever resolves and releases, except to the extent necessary to enforce this Agreement or the COFINA Plan, all claims against and ownership interests in the COFINA Pledged Taxes, the Pre-FY2019 BNYM Deposits and the FY2019 BNYM Deposits, including, without limitation, all claims, causes of action, and counterclaims (i) that were or could have been asserted consistent with the Stipulation and (ii) concerning or relating to the COFINA Pledged Taxes or the Commonwealth-COFINA Dispute (as expanded by the Mediation Scope Order); provided, however, that nothing herein shall affect any rights, claims, or interests that creditors of the Commonwealth may have with respect to the COFINA Pledged Taxes that are (x) not allocated to COFINA consistent with the Agreement in Principle and (y) received by the Commonwealth.
(b) Notwithstanding the proviso in Section 5(a) hereof, the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred from bringing or pursuing any and all claims against the COFINA Agent, COFINA, and its current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members, and any creditors or insurers of debt of COFINA, (i) in the case of the creditors of the Commonwealth and the insurers of debt of the Commonwealth, arising out of their capacities as creditors of the Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits, and (ii) in the case of the Commonwealth, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits.
(c) For the avoidance of doubt, (a) the foregoing releases shall not release any claims that a beneficial holder of an insured COFINA Bond or BNYM, as trustee for the Existing Securities, may have against the insurer of such Existing Securities (or any claims that such insurer may *90 have against the beneficial holder of such Existing Securities) under or relating to the policy of insurance issued by such insurer except as the COFINA Plan may otherwise provide and (b) there shall be no release of any claims by any party against the insurers or underwriters of the Existing Securities or the general obligation bonds issued by the Commonwealth, including their current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members.
(d) Any claims by COFINA, against any underwriter of the COFINA Bonds (such claims, the "COFINA Underwriter Claims") shall not cause the Commonwealth or any of its instrumentalities to incur any liability with respect to the COFINA Underwriter Claims in the nature of contribution, reimbursement, or indemnification, however denominated or described, in connection with, arising out of, or in any way related to such claims (the "Covered Claims"). Any underwriter of the COFINA Bonds against which a COFINA Underwriter Claim has been asserted shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Covered Claim based upon, related to, or arising out of the COFINA Underwriter Claims against that underwriter, whether such Covered Claim is asserted in a court, an arbitration, an administrative agency or forum, or in any other manner; provided, however, that COFINA, any insurer of Existing Securities, and any holder of Existing Securities, as applicable, shall reduce and credit against any judgment they may obtain against any underwriter of the Existing Securities the amount of any Covered Claim which is determined and awarded by a court of competent jurisdiction in any action involving the prosecution of the COFINA Underwriter Claims against such underwriter.
(e) The Title III Court's approval of this Agreement, including the order confirming the COFINA Plan, shall specifically grant releases and injunctions consistent with this Section 5.
6. COFINA Agent Support. The COFINA Agent shall support confirmation of the COFINA Plan properly embodying this Agreement. In the event that the Title III Court reinstates one or both of the Motions for Summary Judgment as contemplated by the SJ Termination Order, the Parties shall jointly seek to extend the Abeyance Period until the earlier to occur of (a) the Effective Date and (b) the termination of this Agreement pursuant to the terms hereof.
7. Fees and Expenses. Except as otherwise authorized or permitted by the Term Sheet, no costs (including professional fees) incurred by COFINA or its stakeholders (including owners of Existing Securities and insurers of Existing Securities) with respect to COFINA (including the litigation of the Commonwealth-COFINA Dispute, the COFINA Plan, or the structuring of the COFINA Bonds) shall be borne by the Commonwealth and shall not in any way affect the Commonwealth Portion; provided, however, that nothing in this Agreement shall affect the right of the COFINA Agent and her professionals to be compensated or reimbursed in accordance with the terms and provisions of that certain Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 3269] and other orders of the Title III Court.
8. Termination.
(a) This Agreement shall terminate automatically if the effective date of the COFINA Plan incorporating this Agreement *91 does not occur or the Settlement Motion is not approved, in each case, by March 1, 2019; provided, however, that, upon notice provided by the Oversight Board, such date shall be extended up to and including June 1, 2019.
(b) The COFINA Agent may terminate this Agreement by providing written notice to the Oversight Board upon the occurrence of any of the following events, with termination being effective immediately upon receipt of such notice:
(i) The Title III Court enters an order that no confirmable COFINA Plan can be proposed that is consistent with this Agreement.
(ii) The Title III Court enters an order on the merits of the Motions for Summary Judgment (except for an order resolving the Motions for Summary Judgment on the basis that this Agreement has been approved and the Effective Date has occurred).
(iii) The COFINA Title III Case is dismissed prior to confirmation of the COFINA Plan.
(iv) The COFINA Plan is modified to be materially inconsistent with the Term Sheet in the COFINA Agent's reasonable discretion.
(c) In the event that this Agreement is terminated by the COFINA Agent, then (i) except as set forth in the order entered by the Title III Court [Adv. Pro. No. 534] governing the COFINA Pledged Taxes collected as of June 30, 2018 (the "SUT Procedures Order"), which order shall survive any termination of this Agreement, this Agreement shall be null and void ab initio and of no force or effect and (ii) each of the Parties shall be returned to the Parties' position status quo ante (except as set forth in the SUT Procedures Order), and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein, and nothing herein shall be deemed an admission of any kind.
9. Rules of Construction. The headings of the sections of this Agreement are intended only as a guide and are not intended, and should not be construed, as controlling, enlarging, restricting, explaining or modifying, in any manner, the language or meaning of those sections or subsections. Each of the exhibits, annexes, signature pages, and schedules annexed hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes, and schedules. When a reference is made in this Agreement to a Section, Exhibit, or Schedule, such reference shall be to a Section, Exhibit, or Schedule, respectively, of or attached to this Agreement unless otherwise indicated. Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement, (c) the words "include," "includes," and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or." The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the Party drafting such agreement or document.
10. No Admission. Each Party expressly recognizes that neither this Agreement, *92 nor any other action taken to comply with this Agreement represents an admission of liability or responsibility on the part of either Party. Neither this Agreement nor any action taken to comply with its provisions shall be construed as, or used as, an admission of any fault, wrongdoing, or liability whatsoever in this or any other matter.
11. Entire Agreement. The Parties acknowledge that no promise, inducement, or agreement not stated herein has been made to them in connection with this Agreement, and that this Agreement constitutes the entire agreement between them.
12. No Oral Modifications. This Agreement may be amended, modified or otherwise changed only in a writing signed by both Parties.
13. Severability. If any provision of this Agreement, or application of such provision to any person or circumstance, shall be held invalid by a court of competent jurisdiction, then such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and this Agreement shall be construed, performed, and enforced as if the reformed provision had been included in this Agreement at inception, and the invalidity of any provision of this Agreement shall not affect the remainder of this Agreement.
14. Choice of Law; Jurisdiction. This Agreement shall be governed by, and construed under and in accordance with, the laws of the State of New York, determined without reference to principles of conflicts of law (other than Section 5-1401 of the New York General Obligations Law ). The Parties agree that the Title III Court shall have exclusive jurisdiction over any disputes relating to this Agreement until both the Commonwealth Title III Case and the COFINA Title III Case have been closed. The Parties irrevocably waive any objection on the grounds of venue, forum non conveniens or any similar grounds.
15. Counterparts. This Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement. Each of the Parties may execute this Agreement by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original. This Agreement shall not be binding until signed by both Parties.
16. Inconsistencies. To the extent that any of the terms and provisions set forth herein are inconsistent with the terms and provisions of the Term Sheet, the terms and provisions of the Term Sheet shall govern in all respects.
*93 BETTINA M. WHYTE IN HER CAPACITY AS COFINA AGENT By: Name: Bettina M Whyte Title: COFINA Agent THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO By: ____________________ Name: ____________________ Title: ____________________
IN WITNESS WHEREOF, this Agreement is executed as of the date first written above.
BETTINA M. WHYTE IN HER CAPACITY AS COFINA AGENT By: ____________________ Name: ____________________ Title: ____________________ THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO By: Name: Natalie A. Jaresko Title: October 19, 2018
*94 Schedule 1
COFINA Bond Issuances
COFINA Bond Series Date of Issuance Principal Amount of Issuance Series 2007A July 13, 2007 $2,667,603,572.60 Series 2007B July 17, 2007 $1,333,101,779.90 Series 2007C December 18, 2007 $499,996,627.90 Series 2008A June 25, 2008 $737,046,992.35 Series 2009A June 10, 2009 $4,118,153,700.00 Senior Series 2009C June 10, 2009 $237,875,000.00 First Subordinate Series 2009B June 19, 2009 $1,217,915,799.20 First Subordinate Series 2010A January 28, 2010 $1,823,757,271.30 First Subordinate Series 2010C June 24, 2010 $1,619,404,596.60 First Subordinate Series 2010D June 24, 2010 $89,435,000.00 First Subordinate Series 2010E June 24, 2010 $92,755,000.00 First Subordinate Series 2011A-1 November 16, 2011 $397,758,386.20 First Subordinate Series 2011A-2 November 16, 2011 $337,037,187.75 First Subordinate Series 2011B November 16, 2011 $45,620,000.00 Senior Series 2011C December 1, 2011 $1,006,474,702.00 Senior Series 2011D December 1, 2011 $91,155,000.00

The question of feasibility is before the Court from COFINA's perspective in connection with the proposed COFINA Plan of Adjustment and is not properly raised from the Commonwealth's perspective in the objections to this Motion.

All docket references are to the Commonwealth Title III Case unless indicated otherwise.

All references to "Adv. Pro. No." are docket references to the Adversary Proceeding.

Capitalized terms used but not otherwise defined herein have the meanings given to them in the Amended PSA and the Term Sheet.